UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JEFFERY W. HOPKINS,

      Petitioner,

v.                                     Case No. 5:12cv401/MW/CJK

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 13). Respondent moves to dismiss the petition as time-barred, providing relevant portions of the state court record. (Doc. 55). Petitioner opposes dismissal. (Doc. 77). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the court show that the petition is untimely and should be dismissed.

BACKGROUND AND PROCEDURAL HISTORY

On December 6, 2007, petitioner was charged by Information filed in the Circuit Court for Bay County, Florida, Case No. 07-CF-3014, with driving under the influence manslaughter ("DUI manslaughter") (Count I), driving while license suspended or revoked (Count II) and possession of marijuana (Count III).  (Doc. 55, Ex. A, p. 44).[1]  Petitioner pleaded guilty to Counts II and III and was sentenced to time served.  (Ex. A, pp. 107-08).  Petitioner went to trial on Count I, (Exs. B, C), and was found guilty by jury verdict of DUI manslaughter as charged.  (Ex. A, p. 154).  By judgment rendered July 30, 2008, petitioner was adjudicated guilty of DUI manslaughter and sentenced to fifteen years imprisonment.  (Ex. A, pp. 149-153).  Petitioner's judgment of conviction was affirmed on direct appeal, per curiam and without a written opinion, on March 17, 2009.  *Hopkins v. State*, 4 So. 3d 1225 (Fla. 1st DCA 2009) (Table) (Case No. 1D08-3809) (copy at Ex. G).  Petitioner filed (by prison mailbox rule) a motion for rehearing on March 31, 2009.  (Ex. I).  The motion was received by the First DCA on April 8, 2009 (Ex. J), after the mandate had issued on April 2, 2009.  (Ex. H).  Petitioner's motion for rehearing was denied on April 29, 2009.  (Ex. J).

On April 28, 2010, petitioner filed a *pro se* petition for writ of habeas in the Florida First District Court of Appeal ("First DCA"), alleging ineffective assistance of appellate counsel.  (Ex. M).  The First DCA denied the petition on June 2, 2010.  *Hopkins v. State*, 37 So. 3d 375 (Fla. 1st DCA 2010) (Table) (Case No. 1D10-2342) (copy at Ex. N).  Petitioner filed a motion for rehearing on June 10, 2010, which was

---

[1] All references to exhibits are to those provided at Doc. 55, unless otherwise noted.  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

denied on July 6, 2010.  (Exs. K, L).[2]

On August 26, 2010, petitioner filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. O, pp. 1-4).  The state circuit court denied the motion.  (*Id*., pp. 5-11).  The First DCA summarily affirmed on March 9, 2011, per curiam and without a written opinion.  *Hopkins v. State*, 56 So. 3d 770 (Fla. 1st DCA 2011) (Table) (Case No. 1D10-6225) (copy at Ex. P).  The mandate issued April 5, 2011.  (Ex. Q).

While petitioner's Rule 3.800 proceeding was pending, on October 26, 2010, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. R).  On November 29, 2010, the state circuit court struck the motion as facially insufficient with leave to amend within thirty days.  (Ex. S).  Petitioner filed an amended motion on December 20, 2010.  (Ex. T).  The state circuit court struck the amended motion as facially insufficient, providing petitioner another opportunity to amend.  (Ex. U).  On February 21, 2011, petitioner filed a second amended Rule 3.850 motion.  (Ex. V, pp. 1-33).  The state circuit court denied relief without an evidentiary hearing on August 31, 2011.  (Ex. V, pp. 73-134).  The First DCA summarily affirmed on June 26, 2012, per curiam and without a written opinion.  *Hopkins v. State*, 94 So. 3d 586 (Fla. 1st DCA 2012) (Table) (Case No. 1D11-5222) (copy at Ex. AA).  The mandate issued August 27, 2012.  (Ex. DD).

Petitioner filed his original federal habeas petition in this court on December 17, 2012 (doc. 1), which he later amended (doc. 13).  Respondent asserts the petition

---

[2] Petitioner improperly filed the motion under his direct appeal case number (1D08-3809), alleging that the First DCA overlooked controlling points of law and fact in petitioner's writ of habeas corpus alleging ineffective assistance of appellate counsel.  (Doc. 55, Ex. K).  The First DCA overlooked petitioner's use of the wrong case number and, on July 6, 2010, denied the motion for rehearing under case number 1D08-3809.  (Doc. 55, Ex. L).

is untimely and must be dismissed.  (Doc. 55).  Petitioner opposes dismissal.  (Doc. 77).

## TIMELINESS OF PETITION

Because petitioner filed his § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs this petition.  *Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).  The AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal application for a writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1).  The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending.  28 U.S.C. § 2244(d)(2).

Petitioner has not asserted that a State-created impediment to his filing a federal habeas petition existed, that he bases his claims on a right newly recognized by the United States Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence before his conviction became final.  Accordingly, the statute of limitations is measured from the remaining trigger, which is the date on which petitioner's conviction became final.  *See* 28 U.S.C. § 2244(d)(1).

The First DCA denied petitioner's motion for rehearing on direct appeal on April 29, 2009.  Petitioner did not seek review of his conviction in the United States Supreme Court.  Accordingly, petitioner's conviction became "final" for purposes of § 2244 on July 28, 2009, when the ninety-day period for seeking certiorari from the Supreme Court expired.[3]  *See* 28 U.S.C. § 2244(d)(1); *Bond v. Moore*, 309 F.3d 770, 773 (11th Cir. 2002) (holding that limitations period began to run when the time expired for filing a petition for certiorari with the United States Supreme Court).

Once his conviction became final, petitioner allowed 273 days of the limitations period to lapse before filing his state habeas petition on April 28, 2010.  The parties do not dispute that petitioner's state habeas proceeding was pending, and statutorily tolled the limitations period, until July 6, 2010, when petitioner's motion for rehearing was denied.

The limitations period began running once more on July 7, 2010, and ran for 50 days until petitioner filed his Rule 3.800(a) motion on August 26, 2010.

---

[3] The 90-day period for filing in the United States Supreme Court a petition for a writ of certiorari seeking review of a decision of a state appellate court runs from the date of the state court's opinion, not the date of the mandate.  *See* Sup. Ct. R. 13.3; *see also Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006).

Petitioner's Rule 3.800(a) motion was pending, and statutorily tolled the limitations period, from August 26, 2010 (the date it was filed), until April 5, 2011 (the date the First DCA issued the mandate on appeal). *See Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000) (recognizing that a "properly filed" postconviction motion is "pending" under Florida procedure – and consequently tolls the limitations period – until the appellate court's issuance of the mandate on appeal).

While petitioner's Rule 3.800(a) motion was pending, petitioner filed his Rule 3.850 motion on October 26, 2010. The parties do not dispute that petitioner's Rule 3.850 motion remained pending, and statutorily tolled the limitations period, until August 27, 2012 (the date the First DCA issued the mandate on appeal).

The federal habeas limitations period began to run once more on August 28, 2012, and expired 42 days later on October 8, 2012. Petitioner's original federal habeas petition was not filed until December 17, 2012, and is untimely. Petitioner argues he is entitled to equitable tolling due to various health issues that began in 2009. (Doc. 77).

EQUITABLE TOLLING

A federal habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" of his federal habeas petition. *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010) (internal quotation marks omitted); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam) (holding that equitable tolling is available "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence"). "Equitable tolling is an

extraordinary remedy which is typically applied sparingly." *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000). "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011) (*citing Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002)). The petitioner must allege more than conclusory allegations, *San Martin*, 633 F.3d at 1268, and must "show a causal connection between the alleged extraordinary circumstances and the late filing of the federal habeas petition." *Id.* at 1267. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal citation and quotation marks omitted); *see Smith v. Comm'r, Ala. Dep't of Corr.*, 730 F.3d 1266, 1271 (11th Cir. 2012) (acknowledging that petitioners are not required "to exhaust every imaginable option, but rather to make reasonable efforts" (internal quotation marks omitted)). Decisions regarding equitable tolling "must be made 'on a case-by-case basis' in light of 'specific circumstances, often hard to predict in advance,' although [courts] 'can and do draw upon decisions made in other similar cases for guidance.'" *Hutchinson v. Florida*, 677 F.3d 1097, 1098 (11th Cir. 2012) (*quoting Holland*, 560 U.S. at 649).

Only three time periods could possibly be subject to equitable tolling: (1) the 273 days between July 29, 2009, and April 27, 2010; (2) the 50 days between July 7, 2010, and August 25, 2010; and (3) the 111 days between August 28, 2012, and December 17, 2012. These are the only time periods the statute of limitations was running and not statutorily tolled. Before addressing the substance of petitioner's equitable tolling argument, the undersigned provides the following procedural history concerning this claim.

A.      Procedural History of Petitioner's Equitable Tolling Claim

Respondent's motion to dismiss is a "renewed" motion.   (Doc. 55). Respondent first moved to dismiss this proceeding as time-barred on December 4, 2013.  (Doc. 24).  In a response dated January 22, 2014, petitioner asserted he was entitled to equitable tolling based on three circumstances.  First, petitioner asserted he was entitled to equitable tolling for an unspecified period during late 2011, due to not having his legal work with him during a temporary medical stay at the Reception and Medical Center.  (Doc. 28, p. 2).  Second, petitioner asserted he was entitled to equitable tolling for an unspecified period in 2010, due to "a third operation on his right leg fibula and tibia, and being hospitalized for several months at the time." (Doc. 28, p. 2).  Third, petitioner asserted he was entitled to equitable tolling from October 2011 through January 2012, when he was hospitalized and treated for a medical issue involving his lung.  (Doc. 28, pp. 2-3).  Specifically, petitioner alleged that in October of 2011, he "had to be rushed to Tallahassee Hospital by ambulance due to Mr. Hopkins having his lung collapse." (Doc. 28, p. 2).  Petitioner asserted he was in the hospital "for several weeks until he was stable enough to be moved by ambulance to Jacksonville Memorial Hospital for several more weeks to recover, then Mr. Hopkins was taken to Butler Regional Medical Center to recover for several more months." (Doc. 28, pp. 2-3).  Petitioner asserted he "did not have his legal work nor did he have access to his legal work or the ability to proceed due to the circumstances that were neither foreseen nor preventable." (*Id*., p. 3).  Petitioner asserted he was attempting to obtain copies of his prison medical records to support his claim for equitable tolling.  (*Id*.).

For several months following petitioner's response, the parties litigated the issue of petitioner's access to his medical records.  Petitioner asserted, in a sworn affidavit filed April 16, 2014, that when he submitted a request to review his medical records, he was denied access to records pre-dating 2011 for the stated reason that such records "must be in the warehouse."  (Doc. 33, p. 2).  On April 23, 2013, the undersigned ordered that respondent "ensure petitioner is provided an opportunity to review a *complete* set of his medical records."  (Doc. 34).  After the parties disputed by sworn affidavits whether petitioner was provided access to his records, respondent's counsel (Assistant Attorney General Gerace) moved the court for an order allowing DOC-Medical "to disclose Petitioner's medical records that cover the time period of July 28, 2009 to the present [June 18, 2014] to the Office of the Attorney General."  (Doc. 38, p. 3).  AAG Gerace asserted that such order was necessary because she was "hampered by the confidentiality of Petitioner's records in [her] effort to ensure compliance" with the court's April 23, 2014 order, and that counsel also needed access so that she could respond to petitioner's anticipated claim for equitable tolling.  (Doc. 38, p. 3).  Petitioner accommodated counsel's request by authorizing the release of his medical records to respondent's counsel.  (*See* Docs. 39, 40).  Petitioner executed the authorization on June 26, 2014. (Doc. 40).

On July 24, 2014, petitioner filed a "Notice of Unavailability" in which he swore under oath that he "still ha[s] not been able to review a complete medical record prior to 2011 to abtain [sic] the correct and exact times and dates to file the Amended Sworn Affidavit."  (Doc. 42, p. 3).  Petitioner's notice was accompanied by an "Amended Sworn Affidavit Pertaining To Equitable Tolling Due To Extraordinary Circumstances," which was identical to the affidavit petitioner

submitted on April 16, 2014, prior to the court ordering petitioner's access to his medical records. (Doc. 43; *see also* Doc. 33). Respondent filed a response, asserting that petitioner was provided access to a complete set of his medical records. (Doc. 46). Respondent's response included a sworn affidavit from Daphne Nelson, a Medical Records Clerk with the DOC, stating that on January 23, 2014, April 15, 2014, and April 30, 2014, petitioner was provided access to his medical records which covered the time period from 2008 to 2011, and which included petitioner's hospitalizations at Jacksonville Hospital, Tallahassee Memorial Hospital and Lake Butler Medical Unit. (Doc. 46, Ex. A, Nelson Aff. dated 8/11/14).

On August 25, 2014, the undersigned issued an order scheduling a telephone conference with the parties to resolve the medical records issue, and denied respondent's original motion to dismiss. The denial of the motion was without prejudice to respondent's right to re-assert her statute of limitations defense upon resolution of the medical records issue. (Doc. 47). The court held the telephone conference on October 9, 2014. At the conference, AAG Gerace stated that she received copies of the relevant medical records; that she intended to file a renewed motion to dismiss; and that her renewed motion to dismiss would attach copies of petitioner's medical records for the conditions petitioner identified as the basis for equitable tolling (the 2010 leg operation and the 2011 lung issue). (Doc. 51). AAG Gerace indicated she could file and serve her renewed motion to dismiss and attachments within thirty days. Petitioner agreed that a response deadline of twenty-one days was sufficient, and that he would notify the court immediately, via motion, if he could not prepare a response with the records provided. (Doc. 51).

Respondent filed her renewed motion on October 24, 2014, with attachments. (Doc. 55).  After petitioner asserted he did not receive a copy of the renewed motion and exhibits, respondent re-served a copy, which petitioner received on January 7, 2015.  (Doc. 65, p. 2; Doc. 66, Exs. A, B).

Respondent's renewed motion to dismiss attached relevant portions of the state court record (doc. 55, Exs. A-DD), as well as copies of petitioner's medical records relating to hospitalization at Memorial Hospital Jacksonville from June 18-22, 2010, for surgery on his right leg (*see* doc. 55, Ex. QQ; *see also* Exs. EE, FF (petitioner's recovery at RMC hospital from June 22-23, 2010); *and* Exs. LL, MM, NN, OO and PP, pp. 5-29) (petitioner's follow-up treatment at the RMC main unit from June 23, 2010, through February of 2011)).  Respondent also provided copies of petitioner's medical records relating to petitioner's hospitalization and follow-up treatment for pneumonia at Tallahassee Memorial Hospital, Memorial Hospital Jacksonville, and RMC during the period September 27, 2011, through November 9, 2011.  (Doc. 55, Exs. GG-KK).

On January 22, 2015, petitioner filed a Notice in which he asserted "the Exhibits were incomplete as they were missing the DOC Inmate Medical Records." (Doc. 65, p. 3).  Respondent filed a response asserting that petitioner received all of the exhibits attached to her renewed motion to dismiss, and that those were the only medical records relevant to petitioner's claim of equitable tolling due to lack of access to legal materials during hospitalization and recovery for his leg and lung conditions (the conditions petitioner identified in his earlier filings).  (Doc. 66, pp. 2-4).  The court ordered petitioner to clarify what he meant by "incomplete," by filing a supplement to his Notice.  (Doc. 67).

Petitioner's supplement (doc. 68) asserted that by "incomplete," petitioner meant that "Respondents have intentionally and knowingly omitted critical, crucial and relevant portions of Petitioner's Florida Department of Corrections (FDOC) inmate medical file/records as required to be maintained pursuant to Sec. 945.25, Exhibits seq., Fla. Stat., in an attempt to deprive Petitioner of that equitable tolling he is entitled to as hospitalization constituting the requisite extraordinary circumstances even more egregious and medically severe as those in Harper v. Ercole, 648 F.3d 132 (2nd Cir. 2011)." (Doc. 68, pp. 1-2). Petitioner described the omitted medical records as relating to his hospitalization and recovery for surgery on his right leg in 2010, and treatment for pneumonia beginning on September 27, 2011. (Doc. 68, p. 2). Petitioner went on to describe how, on December 17, 2012, the date he filed his federal habeas petition, he was transferred, after his treatment for pneumonia, from the Reception and Medical Center to Wakulla C.I. Annex, but Wakulla C.I. refused to accept him because his discharge instructions indicated he required a wheelchair but he was transported without a wheelchair. (Doc. 68, p. 3). Petitioner referenced Exhibits HH and EE attached to respondent's renewed motion to dismiss, as evidence that he was discharged in a wheelchair. The exhibits petitioner referenced, however, (doc. 55, Exs. HH and EE), related to petitioner's hospitalization and discharge (in a wheelchair) from Memorial Hospital Jacksonville to RMC on October 13, 2011 (not 2012), (doc. 55, Ex. HH, p. 9), and petitioner's discharge (in a wheelchair) from RMC Hospital to the RMC Main Unit on June 23, 2010 (not 2012), (doc. 55, Ex. EE, p. 9).

Nonetheless, in an order issued February 20, 2015, the undersigned liberally construed petitioner's pleading as suggesting that equitable tolling might apply to the

111-day period from August 12, 2012, through December 16, 2012.  Because respondent, understandably, had not provided petitioner's medical records for that time period, the court in an abundance of caution ordered respondent to file with the court and serve upon petitioner a complete copy of petitioner's medical records for the three time periods that could possibly be subject to equitable tolling (July 29, 2009 - April 27, 2010; July 7, 2010-August 25, 2010; and August 28, 2012 - December 16, 2012).  (Doc. 69).

AAG Gerace sought an extension of time, asserting that:  "Undersigned provided all medical records which applied to [petitioner's original claims of equitable tolling for leg surgery in 2010 and a collapsed lung in 2011] with the renewed motion to dismiss."  (Doc. 70, p. 1).  AAG Gerace represented to the court that she was diligently working to obtain additional medical records for the court-ordered time periods, but required more time.  (Doc. 70, p. 2).  The court granted a limited extension (doc. 71) and, on March 13, 2015, AAG Gerace filed a copy of all medical records she had received for the relevant time periods.  (Doc. 72, Exs. 14-16).  In addition, AAG Gerace filed a copy of additional medical records she had received regarding petitioner's treatment at Memorial Hospital Jacksonville for pneumonia in October of 2011, even though they fell outside the time period subject to the court's February 20, 2015 order.  (Doc. 72, Ex. 17).  AAG Gerace confirmed that those were all the medical records she had received pertaining to the time periods at issue.  (Doc. 74).

Petitioner has now responded to respondent's renewed motion to dismiss.  (Doc. 77).  Petitioner begins by arguing that AAG Gerace's production of medical records should be viewed with suspicion, because:  (1) the DOC has never provided

petitioner access to a complete set of his entire medical file, (2) AAG Gerace "dragged her feet in this issue," and (3) AAG Gerace provided "only portions of the record that Respondent saw fit."  (Doc. 77, p. 2).  To be clear, this court's February 20, 2015 order directed AAG Gerace to provide a complete copy of petitioner's medical records for the three time periods that could possibly be subject to equitable tolling (July 29, 2009 - April 27, 2010; July 7, 2010 - August 25, 2010; and August 28, 2012 - December 16, 2012).  The order was mandatory, not discretionary (*i.e.*, AAG Gerace was not given the discretion to provide only those records within the required time periods that she saw fit).  AAG Gerace's response to that order included not only the records covering the required time periods (and more), but also a representation, as an officer of the court, that those were are all of the records she had received relating to those time periods.  (Docs. 70, 72, 74).  Without a particularized assertion that other medical records relating to those time periods exist, the court has no cause to doubt AAG Gerace's representations to the court.  Petitioner's suggestion – that AAG Gerace selectively provided only those records she saw fit – appears to be based on nothing more than petitioner's suspicion and speculation.  Thus, despite petitioner's suggestion, there is no basis to find that petitioner has been deprived of information or records necessary to present to the court specific allegations outlining the time periods that should be equitably tolled and the reasons for equitable tolling.

B.    Substantive Review of Petitioner's Equitable Tolling Claim

The only time periods for which equitable tolling could apply (should petitioner make the requisite showing) are July 29, 2009 - April 27, 2010; July 7, 2010 - August 25, 2010; and August 28, 2012 - December 16, 2012.  These are periods of time when the statute of limitations was running and was not statutorily

tolled under 2244(d)(2) by the pendency of a tolling state motion. Petitioner argues equitable tolling should be applied to all three time periods.  (Doc. 77).

July 29, 2009 - April 27, 2010

Petitioner claims he is entitled to equitable tolling for this period because of a fracture to his right leg/ankle that resulted in orthopedic surgery on June 18, 2010. Petitioner's medical records demonstrate that in early July of 2009, petitioner was transferred between the Northwest Florida Reception Center (NWFRC) and the Reception and Medical Center (RMC) for consultations with an orthopedist.  (Doc. 72, Ex. 14, pp. 1-6).  Upon petitioner's return to NWFRC on July 22, 2009, petitioner remained at NWFRC until June 15, 2010, except for two one-day appointments at RMC on December 15, 2009, and March 1, 2010.  (Doc. 72, Ex. 14, pp. 5-16 (medical records documenting petitioner's medical care at NWFRC); *see also* Doc. 72, Ex. 12, pp. 1-4 (medical records documenting petitioner's two appointments at RMC)).

During this period of confinement at NWFRC, petitioner prepared a state habeas petition, which he mailed on April 28, 2010.  (Doc. 55, Ex. M (petitioner's state habeas petition mailed from NWFRC on April 28, 2010)).[4]   In addition, immediately before petitioner's surgery, he prepared the motion for rehearing in his state habeas case, which he filed in the First DCA on June 10, 2010, just five days prior to his transfer to RMC for pre-operative care.  (Doc. 55, Ex. K (petitioner's motion for rehearing).  The fact that petitioner was able to prepare and file these pleadings in state court at a time when he was suffering the same health condition

---

[4] The signature block on petitioner's state habeas petition identifies petitioner's institution as "Northwest Florida Reception Center."  (Doc. 55, Ex. M, p. 13).  The institutional mail stamp indicates the petition was mailed from "Washington CI."  (Doc. 55, Ex. M, p. 1).  NWFRC was originally called Washington Correctional Institution, but the name was changed in 2008.  *See* www.dc.state.fl.us/facilities/region1.

underlying his present claim for equitable tolling (a condition which would not have improved over time) belies his general assertion that the pain and inability to walk preceding his June 18, 2010, surgery prevented him from diligently pursuing his rights during the first nine months of the limitations period. *See Cole v. Warden, Georgia State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014) ("Determining whether a factual circumstance is extraordinary to satisfy equitable tolling depends not on 'how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" (*quoting Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008))).  Nor does petitioner make a showing of diligence during this period.  (*See* Doc. 77, pp. 4, 5).  As petitioner has not demonstrated that the medical issue affecting his right leg/ankle was sufficiently debilitating to constitute an extraordinary circumstance that would justify equitable tolling, or that he exercised diligence in pursuing federal habeas relief (or a tolling state motion) during this period, petitioner is not entitled to equitable tolling during the period July 29, 2009, through April 27, 2010.  *See, e.g., Mazola v. United States*, 294 F. App'x 480, 482 (11th Cir. 2008) (holding that habeas petitioner failed to show that his medical conditions constituted extraordinary circumstances during the time preceding his hospitalization, or that he acted diligently to file his petition in a timely manner; thus, petitioner was not entitled to additional equitable tolling of one-year period to file petition beyond the 42 days already granted for the time he was actually hospitalized); *Lang v. Alabama*, 179 F. App'x 650, 651 (11th Cir. 2006) (holding that although habeas petitioner suffered from significant health problems during the federal habeas limitations period, he failed to show that his medical conditions were sufficiently

debilitating to constitute "extraordinary circumstances" justifying equitable tolling and that he exercised enough diligence in pursuing his habeas petition during the limitations period; there was no evidence that petitioner's rectal pain, the doctor's "do not sit for longer than 30 minutes" orders, or the effects of chemotherapy prescribed upon petitioner's diagnosis with cancer, prevented petitioner from periodically sitting in the law library for short periods to prepare his petition; further, there was no evidence that petitioner's chest pain which ultimately resulted in bypass surgery was such that it prevented him from taking some action to pursue the timely filing of his petition).[5]

Petitioner's Leg Surgery in June of 2010

Petitioner was transferred from NWFRC to RMC on or about June 15, 2010, for pre-operative care.  (Doc. 72, Ex. 15, pp. 1-2).  Petitioner was transferred from RMC to Memorial Hospital Jacksonville on June 18, 2010, where he remained until June 22, 2010.  (Doc. 72, Ex. 13; *see also* Doc. 72, Ex. 1).  Petitioner was returned to RMC on June 22, 2010, (doc. 72, Ex. 1, p. 1) and discharged from the RMC hospital to the compound (the RMC main unit) on June 23, 2010, with the notation "improved." (*Id*.).  Petitioner was given medical passes for a wheelchair, low bunk, and no weight bearing.  (*Id*., p. 9, 24, 26, 28).  Petitioner's surgery on June 18, 2010, and convalescence thereafter occurred during a period of statutory tolling until July 6, 2010, due to the pendency of petitioner's state habeas petition.

---

[5] The undersigned cites *Mazola* and *Lang* only as persuasive authority and recognizes that the opinions are not considered binding precedent.  *See* 11th Cir. R. 36-2.

July 7, 2010 - August 25, 2010

Petitioner argues he is entitled to equitable tolling during the 50-day period intervening the denial of his state habeas petition and the filing of his Rule 3.800(a) motion, because following his June 18, 2010, surgery, he "was placed on narcotic pain medications and steroids for several months and involved in intense physical therapy severely limiting his ability to access the library and competently work on any legal issues. (Doc. 77, pp. 5-6 (citing medical records at Doc. 72, Ex. 15)). Respondent asserts that petitioner's period of convalescence from his leg surgery was not severe enough to actually prevent him from pursing his legal rights, as evidenced by petitioner's preparation and filing of his Rule 3.800(a) motion, which he mailed from RMC on August 26, 2010, just two months (not "several" as petitioner describes) after his surgery. (Doc. 66, p. 3; *see also* Doc. 55, Ex. O, pp. 1-4 (petitioner's Rule 3.800(a) motion)). Respondent emphasizes that even giving petitioner the benefit of equitably tolling the 50-day period between July 7, 2010, and August 25, 2010, petitioner's federal habeas petition would still be untimely by 19 days. (Doc. 66, p. 3). Respondent is correct.

August 28, 2012 - December 16, 2012

Even giving petitioner the benefit of assuming (without deciding) that he is entitled to equitable tolling for the period July 7, 2010, through August 25, 2010, that would mean that once petitioner's Rule 3.850 proceeding was complete (when the mandate issued on August 27, 2012), petitioner had 92 days remaining on the statute of limitations clock.[6] Under this scenario, the federal habeas limitations period expired on November 27, 2012. Petitioner did not file his federal habeas petition

---

[6] 365 days minus 273 days of untolled time.

until December 17, 2012.

Petitioner argues he is entitled to equitable tolling beginning November 1, 2012, for the following reason:

> Respondent's Exhibit 16 reflects that on 11/2/12 Hopkins was to receive surgery.  The surgery performed was a liver biopsy, cutting a piece of Hopkins liver out to procure for testing.  After surgery Hopkins was kept at hospital for several days pending recovery.  (See, Respondent's Exhibit 16)  Once released, Mr. Hopkins spent several days restricted to bed and several weeks severely limited in his mobility due to pain and stiffness during the recovery period.

(Doc. 77, p. 6).

Petitioner's medical records characterize petitioner's November 2, 2012, diagnostic procedure as a "liver US [ultrasound]" (doc. 72, Ex. 16, p. 2), a "liver sonogram"  (doc. 72, Ex. 16, p. 3) and an "x-ray procedure" (doc. 72, Ex. 16, p. 3). Petitioner's medical records indicate that the sonogram was not performed at the RMC Hospital, but rather in the Radiology Department of either the RMC Main or West unit.  (Doc. 72, Ex. 16, pp. 2-3).  There is no record of a hospital admission, or of any medical restrictions or complaints following the procedure.  Petitioner's medical records do not support petitioner's characterization of the sonogram as an "extraordinary circumstance" *see Cole, supra*, nor do they support petitioner's assertion that he was hospitalized for several days, then bed-ridden for several more days, and then suffered "severe[ ] limit[ation]" in his mobility for "several weeks" due to the liver sonogram.

Additionally, petitioner alleges no facts suggesting he diligently attempted to file his federal habeas petition in the months preceding the sonogram.  The First DCA issued its opinion in petitioner's Rule 3.850 appeal on June 26, 2012, and denied rehearing on August 9, 2012.  (Doc. 55, Exs. AA, CC).  Thus, petitioner knew, as

early as June 26, 2012, that the state courts had rejected the claims he now raises for federal habeas review.  At the time the First DCA issued its June 26, 2012 opinion, petitioner was housed at Wakulla C.I., where he remained until October 26, 2012. (Doc. 72, Ex. 16).  Petitioner has not articulated how he acted with diligence in attempting to file his federal habeas petition within the time remaining on the limitations clock.  Petitioner was clearly able to pursue his rights during the period following the First DCA's affirmance, because he filed a lengthy and well-researched motion for rehearing in that court on July 6, 2012, supported by extensive case citations.  (*See* Doc. 55, Ex. BB (petitioner's motion for rehearing filed in his Rule 3.850 appeal, mailed from Wakulla CI on July 6, 2012)).  Petitioner also pursued an informal grievance concerning a gain time issue, on or around October 9, 2012.  (*See* Doc. 72, Ex. 16, p. 1 (entry dated 10/09/12 documenting informal grievance received from Wakulla CI classification and forwarded to Wakulla CI medical for response)). Petitioner had no medical procedures or transfers until October 26, 2012, when he was seen in the Gastro Clinic at RMC.  (Doc. 72, Ex. 16, p. 3).  Petitioner has never asserted, despite being given ample time and opportunity, that he made any effort to timely file his federal habeas petition in the months following the denial of state postconviction relief and preceding his liver sonogram.  *See, e.g., Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1209 (11th Cir. 2014) (rejecting petitioner's equitable tolling argument because petitioner failed to articulate how he acted with diligence regarding filing federal habeas petition before statute of limitations expired); *Taylor v. Michael*, 724 F.3d 806, 811-812 (7th Cir. 2013) ("When an inmate, despite roadblocks thrown in his way, has reasonable time remaining to file a habeas petition in a timely manner, the circumstances cannot, as a definitional matter, be said to have prevented timely filing, as the standard requires."); *Melancon v. Kaylo*, 259 F.3d 401,

408 (5th Cir. 2001) (holding that petitioner failed to show reasonable diligence where he waited more than four months after his state postconviction proceeding was no longer pending to file federal habeas petition); *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999) (holding that petitioner failed to show reasonable diligence because he "did not file his § 2254 petition until approximately six months after learning of the denial of his state postconviction application," and "d[id] not explain the six-month delay between being notified about his state application and filing his federal petition").

As petitioner has not alleged specific facts which, if true, show that he pursued his federal rights diligently and that some extraordinary circumstance stood in his way of timely filing his petition, petitioner has not established his entitlement to equitable tolling sufficient to render his petition timely.

## CONCLUSION

Petitioner's federal habeas petition was filed outside the AEDPA's one-year statute of limitations, and is time-barred. The undersigned has given petitioner the opportunity to amplify and support his allegations for equitable tolling. Petitioner has not demonstrated the requisite extraordinary circumstances and diligence necessary to justify equitable tolling for a period sufficient to overcome the statute of limitations bar.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed,

even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Therefore, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That respondent's renewed motion to dismiss (doc. 55) be GRANTED.

2.  That the amended petition for writ of habeas corpus (doc. 13), challenging petitioner's judgment of conviction and sentence in *State of Florida v. Jeffery Wayne Hopkins* in the Circuit Court for Bay County, Florida, Case No. 07-CF-3014 be DISMISSED WITH PREJUDICE.

3.  That the clerk be directed to close the file.

4.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 29th day of April, 2015.

_/s/ Charles J. Kahn, Jr._

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).